*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLAUDIA MOORE,

        Plaintiff-Appellant,

v

MEMBERSELECT INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
May 23, 2025
10:43 AM

No. 365330
Oakland Circuit Court
LC No. 2021-188692-CZ

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Plaintiff, Claudia Moore, appeals as of right from a judgment of no cause of action entered following a jury trial involving plaintiff's claim of breach of contract against defendant, Memberselect Insurance Company ("AAA"). Plaintiff also appeals the trial court's denial of her motions for summary disposition, directed verdict, judgment notwithstanding the verdict (JNOV), and new trial. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of damage to plaintiff's home and contents caused by water originating from a second-floor bathroom in December 2020. AAA insured plaintiff's home and contents under a replacement cost policy. The policy stated:

**GENERAL DUTIES**

A person claiming, or who may claim, any coverage under this policy must:

1. cooperate with and assist us in any matter concerning a claim or suit;

2. send any legal papers received relating to any claim or suit to us promptly;

3. provide any written proofs of claim or loss we require. Submit to examinations by us, under oath, while not in the presence of any other insured person or witness. This must be done as often as we may reasonably require.

-1-

## DUTIES UNDER PART I AND PART III

In the event of property loss, you must:

1.  give us immediate notice.  In case of theft, also notify the police.  In case of credit card, electronic fund transfer card or access device or check forgery loss, also notify the bank or the issuer of the card or device.  If loss is caused by or results from the peril of hail, loss must be reported to us within 12 months of the loss;

2.  protect the property from further damage, making necessary and reasonable repairs to protect the property, and keeping records of the costs of repairs;

3.  separate damaged from undamaged personal property.  Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, Actual Cash Value in the amount of loss claimed;

4. send to us within 60 days after loss, a proof loss signed and sworn to by the insured person, including:

> a.  the time and cause of loss;
>
> b.  the interest of insured persons and all others in the property;
>
> c.  Actual Cash Value and amount of loss to the property;
>
> d.  all encumbrances on the property;
>
> e  other policies covering the loss;
>
> f.  changes in title, use, occupancy or possession of the property; and
>
> g.  if required, any plans and specifications of the damaged buildings or fixtures;

5.  show us the damaged property.  We have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary unimpeded by actions of you or others that prevent us from viewing and inspecting the loss.  We may require you to accompany us when we conduct these activities;

6.  submit to examinations under oath by any person named by us and sign the transcript of the examinations;

7.  produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as we may reasonably require; and

8. produce receipts for any Additional Expenses to maintain your standard of living while you reside elsewhere, and records pertaining to any loss of rental income.

We have no duty to provide coverage under Parts I and III of this policy if you, an insured person, or a representative of either fail to comply with items 1. through 8. above.

The policy further provided that AAA "may not be sued unless there is full compliance with all the terms of this policy."

Following the loss, plaintiff hired Raymond Fair, an independent claims adjuster, to assist her in organizing her claim under the policy. AAA advised plaintiff of the steps she must take to comply with its investigation of the loss and sent her a blank "Sworn Statement in Proof of Loss" to return within 60 days of the loss. During its investigation it requested that plaintiff submit documentation of the claimed loss and her finances. AAA also requested that plaintiff submit to examinations under oath (EUO) and permit inspection of her contents.

On June 25, 2021, plaintiff filed a complaint for breach of contract against AAA because it had not paid for the water loss claim. AAA defended on the basis that plaintiff had not complied with the conditions precedent in the policy such that AAA's obligation to pay had not been triggered. AAA alleged it was still investigating the claim when plaintiff filed her complaint, making her lawsuit premature. AAA also defended on the basis that plaintiff had made material misrepresentations in her claim by exaggerating the extent of damage to both the structure and contents.

At trial, a jury agreed with AAA that plaintiff did not meet her burden of proof to establish that she substantially complied with the conditions precedent. Consequently, she was not entitled to payment under the policy. The jury did not reach the issue of material misrepresentation in light of its finding that plaintiff did not comply with the conditions precedent. The trial court entered a judgment of no cause of action.

In this appeal, plaintiff claims error arising out of the trial court's failure to grant motions for summary disposition, directed verdict, JNOV, and new trial. In her motion for summary disposition, plaintiff argued she complied with each condition precedent as a matter of law and AAA waived the defense of noncompliance. The trial court held there was an issue of fact regarding the conditions precedent and that AAA sufficiently pleaded the defense of noncompliance. In her motions for directed verdict, JNOV, and new trial, plaintiff argued no reasonable juror could conclude that she did not comply with the conditions precedent. The trial court rejected these arguments on the basis that sufficient evidence supported the jury verdict.

Plaintiff also claims evidentiary error arising from admission of evidence of plaintiff's noncompliance with the conditions precedent. She asserts these issues were questions of law for the trial court to decide rather than the jury. Additionally, she claims evidentiary error arising from the admission of Fair's previous fraudulent conduct at trial because it was irrelevant, unfairly prejudicial, and inadmissible under MRE 404 and 608. Plaintiff claims instructional error arising from the trial court's instruction to the jury that plaintiff bore the burden of establishing her compliance with the conditions precedent. Finally, plaintiff contends AAA's interpretation of the policy was unreasonable. We conclude that none of these arguments entitle plaintiff to reversal.

II.  LEGAL BACKGROUND

This appeal involves the effect of a written insurance policy.  An insurance policy is construed in the same manner as any other contract.  *DeFrain v State Farm Mut Auto Ins, Co*, 491 Mich 359, 367; 817 NW2d 504 (2012).  This Court reviews de novo, as a question of law, the proper interpretation of a contract.  *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).  Policy language is given its plain and ordinary meaning.  *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 519; 847 NW2d 657 (2014).  An unambiguous contract must be enforced as written, without judicial construction, because it reflects the parties' intent as a matter of law.  *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009).

To prove breach of contract, plaintiff was required to establish by a preponderance of the evidence "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).[1]  AAA relied on the conditions precedent in its policy requiring cooperation with its investigation of plaintiff's water loss claim as reason that it did not breach the policy by failing to pay the claim.  Those conditions precedent were submission of a proof of loss and documentation, as well as participating in an EUO and permitting AAA to inspect the contents.  A condition precedent "is a fact or event which the parties intend must exist or take place before there is a right to performance." *Knox v Knox*, 337 Mich 109, 118; 59 NW2d 108 (1953) (quotation marks and citation omitted).  "Failure to satisfy a condition precedent prevents a cause of action for failure of performance." *Berkel Co Contractors v Christman Co*, 210 Mich App 416, 420, 533 NW2d 838 (1995).

Michigan courts have previously applied the doctrine of substantial compliance (sometimes called substantial performance) to conditions precedent in insurance contracts.  See *Gibson v Group Ins Co*, 142 Mich App 271, 275-276; 369 NW2d 484 (1985) (applying the doctrine to the EUO requirement); *Reed v Loyal Protective Ass'n*, 154 Mich 161, 175; 117 NW 600 (1908) (applying the doctrine to a notice requirement).  The doctrine of substantial performance is a deviation from the common law that requires strict performance with the provisions of a contract.  *Gibson*, 142 Mich App at 275.  The *Gibson* Court described substantial compliance as follows:

> A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract.

> Generally speaking, deviations from the absolute terms of a contract do not necessarily cause a failure of performance, but may entitle a party to extra compensation or damages.  Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance. On the other hand, where the deviations or alterations are such as would essentially change the terms of performance, they

---

[1] There is no dispute regarding the existence of the policy.  The parties disputed whether plaintiff suffered damages at trial.  We need not address this issue because the jury did not reach it.

will be considered as a failure of performance. [*Id*. at 275-276 (quotation marks and citation omitted).]

Our Supreme Court has explained there is "no fixed formula" of what amounts to substantial performance. *Antonoff v Basso*, 347 Mich 18, 28; 78 NW2d 604 (1956). Rather, "[t]he question is one of degree, its determination involving the resolution of many factors." *Id*.

The purpose underlying the conditions precedent in the policy are determining whether a claim should be adjusted through investigation of the loss, estimation of the insurer's rights and liabilities, and prevention of fraud. See *Gordon v St Paul Fire & Marine Ins Co*, 197 Mich 226, 230; 163 NW 956 (1917) ("The purpose of the examination is to elicit the facts in order that the company may determine whether it will defend or adjust the claim."); *Dellar v Frankenmuth Mut Ins Co*, 173 Mich App 138, 145-146; 433 NW2d 380 (1988) (explaining the proof of loss "allows the insurer to determine with certitude that the insured demands payment under the policy, the amount of the claim, and the question of its liability"); *Wineholt v Cincinnati Ins Co*, 179 F Supp 2d 742, 752 (WD Mich, 2001) (explaining the policy objectives underlying a sworn proof of loss statement include "(1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud").[2]

## III. SUMMARY DISPOSITION

Plaintiff first argues the trial court erred by denying her motion for summary disposition regarding compliance with the conditions precedent in the policy. Plaintiff also argues that AAA waived noncompliance as a defense. We disagree as to both.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).[3] A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted). When considering a motion under this subrule, the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

---

[2] Caselaw from federal courts is not binding precedent but may be relied on for its persuasive value. *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 725 n 5; 957 NW2d 858 (2020).

[3] AAA acknowledges that plaintiff raised arguments regarding her compliance with the conditions precedent in her motion for summary disposition, but argues these issues are unpreserved because plaintiff failed to cite any authority in support of her argument in the trial court. We disagree. An issue is preserved if it is raised before the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). So long as an issue has not been newly raised on appeal, a "party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Id*. at 228.

The trial court properly grants summary disposition when the moving party establishes, except for the amount of damages, there is no genuine issue as to any material fact. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The moving party bears the initial burden to identify the issues about which there is no genuine issue of material fact with supporting evidence. *Id*. at 369-370. If the moving party carries this burden, the nonmoving party must present evidence that demonstrates that a factual dispute remains that must be resolved by the finder of fact. *Id*. at 370. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

A motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings. When deciding a motion under this subrule, the trial court must accept as true all well-pleaded allegations and properly grants summary disposition when a defendant fails to plead a valid defense to a claim. *Slater v Ann Arbor Pub Sch Bd of Ed*, 250 Mich App 419, 425; 648 NW2d 205 (2002). Summary disposition is proper when "the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id*. at 425-426.

As the moving party under MCR 2.116(C)(10), plaintiff bore the initial burden of showing by evidentiary materials that she complied with the conditions precedent. See *Barnard Mfg Co, Inc*, 285 Mich App at 369-370. In support of her motion, plaintiff submitted an affidavit in which she generally claimed that she complied with each of the conditions precedent and AAA failed to pay the claim. She also submitted an investigative report stating the water loss was accidental, an appraisal of the damage to the structure, several e-mails exchanged between the parties' counsel, and two proofs of loss she submitted to AAA. In return, AAA submitted a copy of the policy, the same proofs of loss, e-mails between the parties, and letters rejecting plaintiff's proofs of loss.

A genuine issue of material fact existed whether plaintiff complied with the proof-of-loss requirement. The evidence demonstrated that plaintiff submitted two proofs of loss to AAA; however, AAA sent correspondence several times rejecting these proofs because they were not on AAA's form and were missing information. In return, plaintiff's correspondence to AAA demonstrated that she believed her proofs were compliant and she would not send new proofs.

Likewise, a genuine issue of material fact existed whether plaintiff complied with the production-of-document and EUO requirements. AAA requested financial documents and supporting documents from plaintiff several times between February and May 2021. Plaintiff submitted at least some of the requested documentation. AAA cancelled an EUO because of plaintiff's failure to produce supporting documents. Neither party provided documentation addressing the substance of the EUO plaintiff participated in. Finally, a genuine issue of material fact existed whether plaintiff complied with the inspection requirement. Plaintiff produced no evidence in relation to the inspection requirement. However, AAA's evidentiary materials show it scheduled an inspection of plaintiff's contents with Fair and he did not appear for this appointment.

Plaintiff did not establish as a matter of law that she timely submitted sufficient proofs of loss to AAA, that she submitted sufficient documentation, that she permitted AAA to inspect her contents, or that she complied with AAA's requests for EUOs. Because a genuine issue of fact

existed whether plaintiff complied with the conditions precedent, a question of fact also existed whether her complaint was premature. These issues were properly presented to the jury.

Without citing any supporting authority, plaintiff also argues that AAA waived noncompliance as a defense because AAA failed to file its own motion for summary disposition on these issues. "[W]hen a party merely announces his or her position and fails to cite any supporting legal authority, the issue is deemed abandoned." *Hooker v Moore*, 326 Mich App 552, 557 n 2; 928 NW2d 287 (2018). Consequently, this issue is abandoned. Regardless, if we were to review this issue, plaintiff's assertion is without merit. Plaintiff presented no evidence that AAA waived compliance with the conditions precedent during the investigation. Rather, review of the record shows AAA continuously asserted its reservation of this defense in written correspondence to plaintiff. See *Dailey v Mid-States Ins Co*, 321 Mich 438, 441; 32 NW2d 698 (1948). Likewise, to the extent plaintiff is arguing that AAA failed to plead a special matter in accordance with MCR 2.112(C)(2) (stating that "[a] denial of performance or occurrence must be made specifically and with particularity."), AAA specifically pleaded plaintiff's failure to comply with the conditions precedent in its responsive pleadings.

## IV. DIRECTED VERDICT, JNOV, AND NEW TRIAL

Plaintiff next argues that the trial court erred by denying her motions for directed verdict, JNOV, and new trial because no reasonable juror could have found that she did not comply with the conditions precedent. We disagree.

The standards of review applicable to a trial court's decision on a motion for directed verdict and JNOV are the same when there is no genuine and material difference in the evidence underlying each motion. *Taylor v Kent Radiology*, 286 Mich App 490, 499; 780 NW2d 900 (2009).[4] As previously explained by this Court:

> Motions for a directed verdict or JNOV are essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case. This Court reviews challenges to the sufficiency of the evidence in the same way for both motions: we review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish

---

[4] AAA contends several arguments plaintiff raises on appeal related to compliance with the conditions precedent are unpreserved because they were not raised in the trial court. These include plaintiff's arguments that Michigan law holds that an EUO is noncompliant only when the insured refuses to attend or hold an EUO; the remedy for failure to provide sufficient documentation is dismissal without prejudice; plaintiff was only required to produce documents she could actually produce; and plaintiff can recover on claims supported by the documents even if not all documents are produced. These arguments were not raised before the trial court. If a party fails to preserve an issue in a civil case by not raising it in the trial court, then this Court has no obligation to review the claim of error and may treat it as waived. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023). However, this Court may overlook the preservation requirement because they are questions of law and the facts necessary for their resolution have been presented below. *Id*.

a claim as a matter of law, should the motion be granted. If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury. [*Id*. 499-500 (quotation marks and citation omitted).]

Plaintiff also moved for a new trial. This Court reviews a trial court's denial of a motion for new trial for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). In a motion for a new trial, neither this Court nor the trial court may substitute its judgment for that of the jury unless the record reveals the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551; 965 NW2d 121 (2020), quoting MCR 2.611(A)(1)(e).

## A. PROOF OF LOSS

At trial, the jury heard testimony that shortly after the December 2020 water loss, AAA sent plaintiff correspondence explaining her duties under the policy, requesting a sworn statement in proof of loss and supporting documents, and providing a deadline of February 10, 2021 to return the proof of loss. Plaintiff submitted two proofs of loss to AAA; however, AAA rejected both of these proofs.

The first proof of loss was timely submitted on January 19, 2021, but was incomplete. The form showed that plaintiff claimed $195,000 for damages to the structure. Plaintiff wrote "TBD" in the "contents" and "loss of use" lines because she did not have the list of damaged items from her vendors yet. Plaintiff submitted an appraisal of structural damage, which estimated a repair cost of $143,000, with the first proof of loss. She submitted no other documentation to explain the $52,000 difference between the damages claimed in the proof of loss and the appraisal. AAA rejected this proof as incomplete and extended the deadline to submit a proof to March 10, 2021, and later to March 25 and April 21, when plaintiff did not meet the first extended deadline.

On April 15, 2021, plaintiff sent a second proof of loss, which listed $149,556 in damages to contents, but left the damages amount blank for "building" and "loss of use." She submitted a total loss inventory with the second proof of loss that listed $117,202 in total losses, but provided no other documentation to support the $32,354 difference between the proof of loss and the inventory. Plaintiff used forms supplied by Fair for both proofs instead of the blank forms supplied by AAA.

AAA sent correspondence several times explaining these forms were rejected because they failed to state the actual cash value and loss of use amounts, the claimed damages were not supported with proper documentation, and the proofs of loss filed were not on the form AAA provided. AAA continued to ask for a proof of loss submitted on its own form up through plaintiff filing this lawsuit. Plaintiff's counsel sent defense counsel correspondence refusing to fill out the blank proof of loss provided by AAA. Plaintiff did not submit any additional proofs of loss.

Sufficient evidence supported that plaintiff did not substantially comply with AAA's policy. The policy provides that plaintiff submit "within 60 days after loss, a proof of loss signed and sworn to by the insured person," which among other requirements, lists the actual cash value and amount of loss to the property. Plaintiff argues that there was no requirement in the policy that she use AAA's specific form and her proofs of loss were "sworn to" because they were notarized. Even if we accepted these arguments as true, what plaintiff swore to in her proofs of loss did not fulfill the purpose of the policy.

One of the purposes behind the proof of loss is for the insurer to investigate the claim and determine its rights and liabilities. See *Dellar*, 173 Mich App at 145-146; see also *Wineholt*, 179 F Supp 2d at 752. Neither proof of loss listed the replacement cost or actual cash value for the claimed damages. They did not list any amount for loss of use. Further, both proofs listed damage amounts well above those listed in the supporting documents provided by plaintiff. Without this information, AAA was unable to substantiate plaintiff's claimed damages. As discussed subsequently, plaintiff's insufficient production of documents, failure to permit AAA to inspect, and insufficient EUO did not otherwise supplement this information such that AAA would be able to investigate the claim notwithstanding the deficient proofs of loss.

Another purpose behind the proof of loss is fraud prevention. See *Wineholt*, 179 F Supp 2d at 752. The form plaintiff used did not fulfill this purpose. Fair's form differed from AAA's form because it did not include all the attestations listed in AAA's form. Fair's form omitted a clause that required the signer to attest that she did not cause the loss or misrepresent any of the information in the proof of loss. It also omitted attestations that plaintiff agreed to provide any additional proof that AAA may request and that plaintiff gives AAA the rights to recover any of the amount paid. Accordingly, plaintiff did not swear that she did not exaggerate her claim, misrepresent any part of her claim, or cause the water loss. Generally, these attestations are necessary for AAA to prevent fraud. In this case, AAA suspected plaintiff engaged in fraudulent conduct. The only information available to AAA at the time was that plaintiff was claiming damages above the amounts provided in the only supporting documents. This raised a question of plaintiff's good faith in submitting the proofs. Sufficient evidence supported that plaintiff did not substantially comply with the proof-of-loss requirement.

## B. PRODUCTION OF DOCUMENTS

At trial, plaintiff generally testified that she complied with all of AAA's documentation requests. She listed the documents she provided and asserted that the documents amounted to approximately 200 pages. Her counsel had e-mailed AAA stating that AAA could have anything contained in plaintiff's client file. Plaintiff also presented receipts from replacement items she bought after the water loss. This testimony was countered by testimony that plaintiff did not comply with AAA's numerous requests between January and May for plaintiff to timely submit specific financial documents and documents supporting her claimed loss.

First, regarding submission of financial documents, AAA showed that it made numerous requests for documents and cancelled plaintiff's EUO scheduled for May 6, 2021, because she failed to produce those documents. On May 5, 2021, AAA acknowledged receiving a copy of plaintiff's 2019 tax return, but otherwise stated it had not received the requested documents from plaintiff. These documents included her pension records, disability records, gambling records,

bank account records, mortgage payment records, records for an auto loan, and SNAP finance records. In response to plaintiff's counsel's e-mail offering to produce any record contained in plaintiff's client file, AAA's counsel explained that the issue was not a matter of what was available in plaintiff's client file, but that plaintiff had to make efforts to acquire documents that were not in her possession.

Later in May, plaintiff produced some of the requested documents, but told AAA that it could refer to plaintiff's bank statements for direct deposits related to her disability, pension, and loan records. Plaintiff also told AAA that it could call the Office of Personnel Management if it wanted information regarding her disability payments. Plaintiff advised AAA that she could not find her credit union loan and SNAP financing records. Likewise, plaintiff never signed and submitted a consent form for release of her utility records after several requests.

Second, regarding submission of documents supporting her claimed losses, plaintiff never provided documentation in support of the full amount of damage to the building and contents claimed in her proofs of loss. The first proof of loss listed $195,000 for damage to the structure. Plaintiff provided the appraisal estimating a repair cost of $143,000 for the structure, but did not provide any documentation supporting the remaining $52,000 in the first proof of loss. The second proof of loss listed $149,556 in damages to contents. Plaintiff provided a total loss inventory listing $117,202 with the second proof of loss, but provided no other documentation to explain the additional $32,354.

Likewise, the total loss inventory failed to provide all information AAA requested. The policy required that plaintiff "[g]ive us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, Actual Cash Value in the amount of loss claimed." Plaintiff submitted an inventory listing 718 items as total losses. This was 560 more items than those listed in the inventory of total losses drafted for plaintiff by W.B. Smits, the company that cleaned and assessed plaintiff's soft contents. The inventory failed to list depreciation or replacement cost for each of the items. Further, many of the items listed in the inventory were unsupported by documentation. Plaintiff claimed that she submitted receipts for items listed in the total loss inventory; however, those receipts were not produced at trial.

Viewed in a light most favorable to AAA, the record evidence supports that plaintiff did not substantially comply with the requirement to produce documentation. Plaintiff produced some documentation, but this does not equate with substantial compliance. Instead, plaintiff was required to produce enough documentation to fulfill the purpose of the policy. See *Gibson*, 142 Mich App at 275. AAA was unable to investigate the extent of the loss and determine its liability because it never received documentation to support the full amount of damages claimed in the proofs of loss.

Likewise, AAA requested information related to plaintiff's finances to investigate motive for potential fraud. In this case, AAA had reason to suspect fraud. Plaintiff submitted proofs of loss that claimed substantially more damage than the supporting documents provided. Further, plaintiff's total loss inventory contained hundreds of items not listed in the W.B. Smits inventory. AAA did not receive timely and complete documentation such that it could investigate the veracity of these claims.

Plaintiff argues that both Michigan and federal caselaw indicates that an insured is only required to produce documents she could reasonably obtain. See *Springfield Fire & Marine Ins Co v JT Wilson Co*, 67 F2d 426, 427-428 (CA 6, 1933) (explaining that it was sufficient for an insured to answer a demand for documentation that the document was destroyed without the fault of the insured). However, no record evidence presented a reason plaintiff could not obtain the documents she did not provide nor that the unavailability of those documents was not her fault.

Relying on *Bowlers' Alley, Inc v Cincinnati Ins Co*, 108 F Supp 3d 543, 571 (ED Mich, 2015), plaintiff also argues that if some, but not all documents are produced, she may still recover on the claims supported by the documents produced. This case does not support her proposition. The court in *Bowlers' Alley* was assessing the propriety of granting summary judgment to the defendant insurer on the plaintiff's complaint rather than relief on the merits. *Id*. at 549. Moreover, in this case, the policy expressly provides that failure to substantially comply with a condition precedent would result in forfeiture under the policy. Because the jury concluded that plaintiff failed to comply with the conditions precedent, she was not entitled to recovery for any portion of her claim.

Finally, plaintiff argues that the penalty for lack of production is dismissal without prejudice. However, this case was not dismissed on summary disposition with or without prejudice. Instead, this case went before a jury, which decided that plaintiff failed to substantially comply with the conditions precedent. This argument is without merit.

C. EUO

The evidence at trial showed that AAA initially scheduled plaintiff for an EUO in March 2021. The EUO was ultimately rescheduled for May 6 so that plaintiff could retain counsel. AAA sent several letters and e-mails to plaintiff requesting that she submit documentation in preparation for the EUO. A day before the EUO, AAA unilaterally cancelled the EUO, explaining that plaintiff failed to submit a proper proof of loss and supporting documentation.

Plaintiff eventually participated in one EUO on May 19. This EUO was three hours long. Plaintiff cut it short and left because she had an appointment. In that time, the parties were only able to discuss some of plaintiff's financial background. At the conclusion of the EUO, defense counsel requested to schedule a second EUO, acknowledging that they had more to discuss and that AAA would send another request for documentation. Plaintiff did not participate in another EUO before filing this action.

Sufficient evidence supported that plaintiff did not substantially comply with the EUO requirement. Under the policy, plaintiff was required to "[s]ubmit to examinations by us, under oath, while not in the presence of any other insured person or witness. This must be done as often as we may reasonably require." Evident from the plain language of the policy, AAA was able to request as many EUOs as was reasonably required.

Ultimately, the single EUO did not satisfy the purpose of the policy because it did not allow AAA to investigate the loss or determine its liabilities. See *Gibson*, 142 Mich App at 275-276. In the three-hour EUO, the parties only discussed plaintiff's finances. The parties did not have an opportunity to discuss the substance of the claim in that time. Plaintiff expressly agreed to attend

a future EUO and acknowledged that she did not submit the requested documentation. Before AAA had the opportunity to request another EUO, plaintiff filed this lawsuit. Moreover, because plaintiff had not submitted the requested documentation before the EUO, AAA did not have the ability to discuss the water loss claim in the only EUO that occurred.

The fact that plaintiff participated in a six-hour deposition after this lawsuit was filed did not support that plaintiff complied with the conditions precedent. Participation in an EUO and deposition serve distinct functions:

> The policy does not provide that depositions may be substituted for examinations under oath as appellants suggest. Rather, depositions and examinations under oath serve vastly different purposes. First, the obligation to sit for an examination under oath is contractual rather than arising out of the rules of civil procedure. Second, an insured's counsel plays a different role during examinations under oath than during depositions. Third, examinations under oath are taken before litigation to augment the insurer's investigation of the claim while a deposition is not part of the claim investigation process. Fourth, an insured has a duty to volunteer information related to the claim during an examination under oath in accordance with the policy while he would have no such obligation in a deposition. [*Thomson v State Farm Ins Co*, 232 Mich App 38, 54 n 9; 592 NW2d 82 (1998).]

Like the policy in *Thomson*, the policy in this case does not provide that a deposition may substitute for an EUO.[5] Sufficient evidence supported that plaintiff did not comply with the EUO requirement.

## D. INSPECTION

At trial, plaintiff testified that AAA already had an opportunity to inspect her contents because Zsa Bassett, an AAA claims specialist, came to her house shortly after the water loss to assess the damage. Plaintiff further testified that she gave Bassett the key code to her front door, so she could have come at any time to inspect the contents. Plaintiff also testified that she invited AAA several times to inspect the construction performed on the house and her personal property. In response, Bassett testified that her role as a building adjuster was separate from the role of a contents adjuster. When she visited the house in December she was "scoping" the water loss, not evaluating the contents. Further, she testified that it would be a liability for her and AAA to use plaintiff's key code and enter her home without plaintiff being present.

The jury also heard testimony that AAA set up a contents inspection in June with Fair. However, Fair failed to appear for the scheduled inspection and stated that an inspection was no longer necessary because plaintiff filed this action. Likewise, Fair admitted that he never informed AAA that the contents were at W.B. Smits instead of plaintiff's house when he agreed to meet

---

[5] Plaintiff cites to several Michigan and federal cases for the proposition that an EUO is noncompliant only when an insured refuses to attend or hold one altogether. After review of the various cases cited by plaintiff, we conclude that none of them stand for this proposition.

with AAA's representative at the house. After the lawsuit was filed, AAA made another formal request to inspect the contents in April 2022. By that time, plaintiff threw out the contents she claimed were complete losses.

Viewing the evidence in a light most favorable to AAA, sufficient evidence supported that plaintiff failed to comply with the inspection requirement. The policy states, "[w]e have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary unimpeded by actions of you or others that prevent us from viewing and inspecting the loss." Plaintiff argued that she complied with this requirement because Bassett came to the house in December. This argument ignores that Bassett testified that she went to plaintiff's house in December to scope damage to the building. Moreover, at the time Bassett went to plaintiff's house, AAA had no idea what contents plaintiff would be claiming were damaged or total losses requiring replacement.

Plaintiff also argues AAA could have gone to inspect her contents at W.B. Smits at any point before or after she filed this action. However, plaintiff did not provide AAA with an inventory of total losses until April when she filed the second proof of loss. AAA had no reason to schedule an inspection until it knew what contents plaintiff would be claiming as total losses. After plaintiff participated in the EUO in May, AAA scheduled an appointment to inspect the contents in June. Plaintiff's agent did not appear for this appointment and told AAA's agent that an inspection was no longer necessary.

AAA's policy provides that it had the right to inspect the contents as reasonably necessary. Plain from this language is AAA's right to inspect contents more than once. In this case, AAA did not have a single opportunity to inspect the contents, let alone as many as were reasonably necessary. Moreover, plaintiff destroyed the contents she claimed were total losses after she filed the action, preventing AAA from conducting any future inspections. This evidence supported that plaintiff failed to permit AAA to inspect the contents.

In sum, sufficient evidence supported that plaintiff did not comply with each of the conditions precedent. AAA was not obligated to pay plaintiff's water loss claim because plaintiff did not substantially comply with the policy. Additionally, the policy provides, "[w]e may not be sued unless there is full compliance with all the terms of this policy." Plaintiff's complaint was premature because she did not substantially comply with the policy.

Given the conflicting testimony presented regarding the extent of plaintiff's compliance with AAA's investigation, a jury could reasonably infer from the evidence that plaintiff engaged in a pattern of noncooperation. The trial court did not err by denying plaintiff's motions for directed verdict or JNOV because reasonable minds could differ on these material facts. See *Taylor*, 286 Mich App at 499. Likewise, the trial court did not abuse its discretion by denying plaintiff a new trial because the record does not reveal that the evidence preponderated so heavily against the verdict that it would be a miscarriage of justice to allow it to stand. See *Kelly*, 465 Mich at 34.

## V. MOTIONS IN LIMINE

Plaintiff next argues that the trial court abused its discretion by admitting evidence related to AAA's defense of noncompliance. We disagree.

This Court reviews a trial court's decision on a motion in limine for an abuse of discretion. *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013). When a trial court's decision to admit evidence involves a preliminary question of law, this Court reviews that issue de novo. *Barnett v Hidalgo*, 478 Mich 151, 159; 732 NW2d 472 (2007).

Plaintiff contends that whether she complied with the conditions precedent was an issue of law for the trial court to decide and not a jury. In support of this, plaintiff generally cites two points of law: that interpretation of an unambiguous contract is generally a question of law for the court to determine, *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997), and issues involving the coverage of an insurance policy are generally questions of law for the trial court to determine. *Auto-Owners Ins Co v Kwaiser*, 190 Mich App 482, 487; 476 NW2d 467 (1991). While both of these points of law are valid, plaintiff's reliance on them is misplaced. The jury was not tasked with interpreting the terms of the insurance policy. Likewise, AAA did not argue that plaintiff's water loss was not covered by the policy.

Instead, the task before the jury was plaintiff's substantial compliance with the insurance policy, a dispute to which the parties vehemently disagreed and submitted conflicting proofs. Generally, "[w]here facts are in dispute, it presents a question of fact for the jury." *Reinforced Concrete Co v Boyes*, 180 Mich 609, 616; 147 NW 577 (1914). Moreover, whether a party to a contract has substantially performed often involves various questions of fact. *Antonoff*, 347 Mich at 28-29. Plaintiff has identified no other reason to exclude this evidence. Therefore, the trial court did not abuse its discretion by denying plaintiff's motions in limine.

## VI. EVIDENTIARY ERROR

Plaintiff argues that evidence of Fair's previous fraudulent conduct in an unrelated water loss claim was inadmissible under MRE 402, 403, 404, and 608(b).[6] Concluding that the trial court did not abuse its discretion by admitting this evidence under MRE 402, 403, or 404(b), we disagree.

"When an evidentiary issue is preserved, a trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018) (quotation marks and citation omitted).[7] Any error in the admission or exclusion of evidence is

---

[6] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

[7] AAA argues this issue is unpreserved because plaintiff did not cite MRE 402, 403, or 404 when she objected to admission of evidence regarding Fair's previous fraudulent conduct. We disagree. "To preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal." *Nahshal*, 324 Mich App at 709-710. "Counsel must state the specific ground of objection, if the specific ground was not apparent from the context." *Id*. at 710 (quotation marks and citation omitted). Plaintiff expressly cited MRE 404 in its objection. Although plaintiff did

not grounds for reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the affected party. *Craig v Oakwood Hospital*, 471 Mich 67, 76; 684 NW2d 296 (2004); see also MCR 2.613(A).

The evidence at issue is the following testimony elicited from Kellie Klingaman, a special investigative unit agent employed by AAA:

> *Q*. And do you know, what is your experience with Ray Fair, just in terms of your work?

> *A*. Okay. My past history with Ray is that we have invest – I have investigated fraudulent water losses with him as the public adjuster where the loss has been staged. Contents were moved from one insured's house into another. We were able to verify that with the fact that – through pictures, you were able to see this white couch that was in the basement of one insured's house. And then, a few months later, we found that same couch with unique marking on it in another insured's house. Both claims involved Mr. Fair.

> And that investigation was actually handled by another claim representative, but I was able to identify the concerns as it related to being a staged claim.

Generally, only relevant evidence is admissible. MRE 402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence admissible under MRE 401 and MRE 402 is logically relevant. *People v VanderVliet*, 444 Mich 52, 60; 508 NW2d 114 (1993), amended 445 Mich 1205; 520 NW2d 338 (1994). Evidence that is logically relevant under MRE 401 and 402 may still be excluded under a rule of legal relevance. MRE 404 generally precludes admission of character evidence to prove that an individual acted in conformity with that character. MRE 404(a). Under MRE 404(b), other-acts evidence is only admissible "when a party shows that it is (1) offered for a proper purpose, i.e., to prove something other than . . . propensity to act in a certain way, (2) logically relevant, and (3) not unfairly prejudicial under MRE 403." *Rock v Crocker*, 499 Mich 247, 257; 884 NW2d 227 (2016).

---

not expressly cite MRE 402 or 403, it is evident from the record that plaintiff objected to admission under MRE 402 and 403 because she argued the evidence was irrelevant and unfairly prejudicial. AAA also argues that plaintiff did not challenge the evidence under MRE 608(b). We agree. Plaintiff did not expressly cite MRE 608 nor can the context of her objection be said to address this ground for inadmissibility at trial. However, unpreserved evidentiary issues are an exception to the waive-or-raise rule in which this Court may exercise its discretion to review an unpreserved error for plain error affecting substantial rights. See MRE 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court"); *Wischmeyer v Schanz*, 449 Mich 469, 483; 536 NW2d 760 (1995).

-15-

The trial court held that Klingaman's testimony was offered for the proper purpose of establishing motive. Motive is the "[c]ause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act." *People v Hoffman*, 225 Mich App 103, 106; 570 NW2d 146 (1997), quoting *Black's Law Dictionary* (revised 5th ed). Evidence of Fair previously staging a water loss was not evidence that he was motivated to stage plaintiff's water loss. This evidence does not express some cause or reason behind his desire to assist plaintiff's exaggerated claim. See *id*. Instead, this evidence is more accurately described as a common scheme, plan, or system:

> [E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. There must be such a concurrence of common features that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. A high degree of similarity is required—more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive. [*People v Galloway*, 335 Mich App 629, 644-645; 967 NW2d 908 (2020) (quotation marks and citations omitted; alteration in original).]

The testimony tended to suggest that Fair would add items that were not actually destroyed in an insured's water loss claim to further his own business interests. Because he yielded 10% of anything the insured recovered from the insurer, exaggerating total loss claims increased the amount payable to him.[8]

Klingaman's testimony would have also served the proper purpose of showing lack of accident or mistake. Part of AAA's theory of the case was that plaintiff intentionally misrepresented and exaggerated her total loss inventory. Plaintiff submitted a total loss inventory that listed 560 more items than the items listed by W.B. Smits. Plaintiff specifically worked with Fair to construct and submit this total loss inventory to AAA. Fair's previous conduct of exaggerating losses by adding items to an insured's claim would show lack of accident or mistake in this case. For these same reasons, evidence of Fair's previous staged water loss was also logically relevant under MRE 401.

Plaintiff argues that Fair's past conduct was irrelevant because it occurred eight years before trial. In support of this assertion, plaintiff cites the statute of limitations. See MCL 600.5805(2); MCL 600.5807(9). The statute of limitations acts as a bar on the assertion of claims. It is not a bar on the admissibility of evidence. Instead, admission of evidence is governed by the Michigan Rules of Evidence. MRE 101. In some instances, rules of evidence include time bars. See, e.g., MRE 609(c). However, such a limitation is not present in MRE 401, 402, or 404.

Although there is no time limitation applicable to MRE 401, 402, or 404(b), temporal proximity is relevant to the MRE 403 analysis. See *People v Watkins*, 491 Mich 450, 488; 818 NW2d 296 (2012). Under MRE 403, "[t]he trial court also has discretion to exclude even relevant

---

[8] This Court will not reverse a decision of the trial court when the trial court reached the correct outcome for the wrong reason. *Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).

-16-

evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 730; 761 NW2d 454 (2008). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citation omitted).

Certainly, evidence that plaintiff's hired adjuster previously staged a water loss for a client is prejudicial to plaintiff. All relevant evidence is prejudicial to some extent. The question is whether the danger of unfair prejudice substantially outweighed the probative value of the evidence. Fair's own testimony regarding his assistance in preparing plaintiff's water loss claim was important to plaintiff's claim that she complied with the policy. Evidence suggesting that Fair assisted plaintiff in misrepresenting this water loss to AAA was harmful to plaintiff's theory of the case and Fair's credibility at trial. However, this testimony was highly probative of AAA's theory that plaintiff was dishonest with AAA and exaggerated the damage from the water loss to increase her policy payout with the assistance of Fair and several other witnesses. The fact that evidence of Fair's previous staged water loss was approximately eight years old would diminish its probative value. On balance, however, its probative value was not substantially outweighed by the danger of unfair prejudice. The trial court's decision fell within the range of reasonable outcomes. *Elher*, 499 Mich at 21.[9] Because the trial court did not abuse its discretion, we need not address whether the error in admission of evidence was inconsistent with substantial justice or affects a substantial right of the affected party. *Craig*, 471 Mich at 76.

## VII. JURY INSTRUCTIONS

Plaintiff argues that the trial court erred by instructing the jury that plaintiff bore the burden of establishing her substantial compliance with the conditions precedent in the policy. Because the instruction accurately instructed the jury, we disagree.

Generally, this Court reviews de novo claims of instructional error. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). When reviewing such a claim, this Court "examine[s] the jury instructions as a whole to determine whether there is error requiring reversal." *Id*. "The instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Id*. This Court only reverses for instructional error when the failure to do so would be inconsistent with substantial justice. *Id*.; see also MCR 2.613(A).

The trial court instructed the jury as follows:

---

[9] Plaintiff also argued that the evidence was inadmissible under MRE 608 because it was extrinsic and not elicited during cross-examination of Fair. We need not reach this issue. The trial court admitted the evidence under MRE 404(b), not MRE 608. "[E]vidence that is admissible for one purpose does not become inadmissible because its use for a different purpose would be precluded." *VanderVliet*, 444 Mich at 73.

-17-

> On the following propositions that plaintiff has substantially complied with the policy, plaintiff has the burden of proof.
>
> For the plaintiff to satisfy this burden, the evidence must persuade you that it is more likely than not that the proposition is true.

This instruction was consistent with the model civil jury instruction on conditions precedent. M Civ JI 142.22.

On appeal, plaintiff argues that noncompliance with a condition precedent is an affirmative defense for which the defense bears the burden of proof. Plaintiff relies on *Cheboygan County Rd Comm v Auto-Owners Ins Co*, 87 Mich App 681; 277 NW2d 176 (1978*)*, for this proposition. This case was issued by this Court in 1978. Consequently, it is not binding on this Court. See MCR 7.215(J)(1). Nonetheless, this case does not support that the burden of proof is placed on the insurer to prove an insured's noncompliance with the conditions precedent to the policy. This case involves distribution of the burden of pleading, not burden of proof. *Cheboygan Co Rd Comm*, 87 Mich App at 684-685. Likewise, the Court did not explicitly hold that noncompliance is an affirmative defense. *Id*.

Since *Cheboygan*, this Court has approved quoting 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 239 to explain that placement of the burden of pleading on the insurer does not also shift the burden of proof to the insurer:

> The requirement that defendant must raise the issue of performance of conditions precedent by specific denial does not, however, shift the burden of proof. When the issue has been properly raised by specific denial, plaintiff has the burden of showing that performance or occurrence has been satisfied in the particular aspect denied by defendant. [*Valley Nat'l Bank of Ariz v Kline*, 108 Mich App 133, 138; 310 NW2d 301 (1981) (quotation marks omitted).]

See also *Koski v Allstate Ins Co*, 456 Mich 439, 444; 572 NW2d 636 (1998) ("Ordinarily, one who sues for performance of a contractual obligation must prove that all contractual conditions prerequisite to performance have been satisfied."). Plaintiff offers no binding authority to the contrary.[10] The trial court properly instructed the jury that plaintiff bore the burden of establishing her compliance with the conditions precedent.

## VIII. AAA'S INTERPRETATION OF THE POLICY

Finally, plaintiff argues that the trial court erred by permitting AAA to present evidence of its "unreasonable interpretation" of the policy. This argument is without merit.

---

[10] Plaintiff also argues that AAA admitted in its pleadings that it bore the burden of proof regarding noncompliance; however, "an admission regarding a point of law is not binding on a court." *Ann Arbor Tenants Union v Ann Arbor YMCA*, 229 Mich App 431, 440; 581 NW2d 794 (1998).

Plaintiff generally argues that AAA's interpretation of the contract was unreasonable; however, plaintiff points to no portion of the policy which she claims is ambiguous.[11] Instead, she asserts that no insured would have reasonably expected to wait months for their insurer to adjust or deny a claim. This argument misses that AAA's duty to perform was triggered by the satisfaction of the conditions precedent. As discussed previously, plaintiff did not substantially comply with the conditions precedent in the policy. Therefore, AAA's duty to pay under the contract was not triggered. See *Berkel Co Contractors*, 210 Mich App at 420.

Plaintiff seemingly evokes the doctrine of reasonable expectations to express that the trial court should have read some deadline for AAA to adjust or deny the policy or placed some limitation on the investigation AAA could conduct without regard to plaintiff's own duties under the policy. However:

> This approach, where judges divine the parties' reasonable expectations and then rewrite the contract accordingly, is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy. [*Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003).]

Trial courts lack the authority to modify the unambiguous terms of the contract or balance the equities between the parties. See *id*. In this case, plaintiff has failed to cite any ambiguous policy provision or assert that a provision was subject to several reasonable interpretations. It must be enforced as written. *Hastings Mut Ins Co*, 286 Mich App at 292. The policy set forth particularized actions the insured must take to facilitate the insurer's investigation of the claim. The jury concluded that plaintiff did not fulfill those actions. Plaintiff is not entitled to relief.

## IX. CONCLUSION

Ultimately, the jury returned a verdict that plaintiff did not meet her burden of establishing she substantially complied with the conditions precedent in the policy. This verdict was supported by sufficient, properly admitted evidence at trial. Plaintiff has presented no reason for this Court to overturn the jury's verdict.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford

---

[11] AAA argues this issue is unpreserved because plaintiff raised it for the first time on appeal. However, "a party . . . need not preserve an objection to a 'finding or decision' made by the trial court, MCR 2.517(A)(7), or, at least under some circumstances, to other acts or omissions undertaken sua sponte by a court." *Glasker-Davis*, 333 Mich App at 227-228.